# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING

**MUSTAFA OZSUSAMLAR,**

        Petitioner,

v.                                     Civil Action No.: 5:19cv164
                                        (Judge Bailey)

**F. ENTZEL,**

        Respondent.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On May 6, 2019, Mustafa Ozsusamlar, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"). On May 17, 2019, the petitioner paid the $5 filing fee. The petitioner is a federal inmate housed at FCI Hazelton and is challenging his conviction and sentence from the Southern District of New York. The matter is currently pending before the undersigned for a Report and Recommendation pursuant to LR PL P 2. For the reasons set forth below, the undersigned recommends that the petition be dismissed for lack of jurisdiction.

### II. BACKGROUND[1]

On January 4, 2006, a federal grand jury in the United States District Court for the Southern District of New York indicted the petitioner and his son, Osman

---

[1] Unless otherwise noted, the information in this section is taken from the Petitioner's criminal docket available on PACER and all ECF numbers are from that case. See United States v. Ozsusamlar., 05-cr-1077 (SDNY). Philips v. Pitt Cnty. Mem. Hosp., 572 F. 3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 21239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

Ozsusamlar ("Osman"), on three charges (1) conspiracy to commit murder for hire in violation of 18 U.S.C. § 1958; (2) murder for hire in violation of 18 U.S.C. §§ 1958 and 1952; and (3) conspiracy to commit extortion in violation of eighteen U.S.C. § 1951. ECF No. 16. These charges stemmed from information provided in August 2005 from Mohamad Mabrouk, then an inmate at the Metropolitan Correctional Center ("MCC").

Specifically, Mabrouk informed the Government of a potential murder-for-hire scheme. Mabrouk informed the Government that he talked to the petitioner who wished to hire someone to collect a debt from, and later murder, a man who owed him $283,000. The petitioner offered to pay the hitman ten percent of the debt and said that one of his sons had already tried to collect the debt. Intending to report this conversation to the authorities, Mabrouk informed the petitioner that he was interested.

The petitioner then spoke to his son, Osman, over a recorded telephone line at the MCC. The petitioner and Osman discussed the location of Murat and Dilek Batca, the intended victims. The petitioner then provided the Batcas' names and addresses to Mabrouk on a handwritten piece of paper. The piece of paper also noted the name of another of the petitioner's sons and $283,000. Mabrouk told the petitioner he would pass along the information to an accomplice that same day.

Instead, Mabrouk met with the Government and turned over the piece of paper he received from the petitioner. The Government then arranged for an undercover FBI agent using the alias Joe, to act as the hired killer.

On September 8, 2005, the Agent spoke to the Batcas at their business address, telling them he was there because of their $283,000 debt to the petitioner. Dilek Batca acknowledge there was a debt, but that they had only borrowed 150,000 and only

2

approximately 50,000 remained outstanding. The Agent told the Batcas to collect proof of their payments and that he would be in contact with them.

The FBI also instructed Mabrouk to tell the petitioner that the Agent would attempt to collect the debt and that someone outside a prison would need to contact the Agent for payment. The FBI provided Mabrouk with the Agent's phone number to give to the petitioner. Mabrouk follow these instructions and relayed the information to the petitioner. The petitioner wrote down the phone number and said he would call his son. The petitioner agreed to pay the Agent ten percent of the debt collected.

The petitioner and Osman spoke over a recorded telephone line at the MCC on September 16, 2005. The petitioner told Osman that he found someone and relayed the name Joe and his phone number. The petitioner instructed Osman to call Joe from any phone but his own.

That same day, the petitioner and Osman again spoke via telephone, and Osman informed the petitioner that he had called twice, but Joe had not answered the phone. The petitioner told Osman to tell Joe that he was "Mustafa's son" and that he was with "Mohammed."

The following day, the Agent received a call from Osman, who told Joe he was Mustafa's son. The Agent said that he did not want to talk over the telephone, so they arranged to meet the next day.

On September 18, 2005, the Agent, wearing a concealed recording device, met Osman in Manhattan. The Agent discussed meeting with the Batcas, and Osman stated that the debt was approximately $258,000. The Agent also raised the issue of what to do with the Batcas once he collected the debt. Osman then warned the Agent about

potential dangers, including the nearby Police Department and surveillance cameras. Osman also provided the Agent with his phone number but said that he was worried about a wiretap.

On October 6, 2005, the Agent called Osman to tell them he had the money. They arranged to meet that night, and Osman was arrested when he arrived. Osman admitted knowing the Batcas, and that he had helped lend them $150,000 which had not yet been repaid. Osman said he had not met the Agent until that night, and later said he might have met them once before but could not recall when. Osman also claimed not to know how the Agent obtained his phone number. Osman stated that the Agent had offered to collect the money "out of the blue" and that he had told the Agent not to kill the Batcas after the Agent brought them up.

The petitioner was arrested the next day at the MCC and the FBI conducted a court-authorized search of his cell and discovered pieces of paper containing Murat Batca's name and phone number and the Agent's name and phone number.

The trial began on April 10, 2006. The petitioner and Osman were convicted on all three counts on April 20, 2006. Following the trial, the petitioner requested new counsel, and new counsel was appointed. ECF No. 52. On April 5, 2007, the district judge granted the Petitioner's request to proceed pro se, and directed that counsel remain as stand-by counsel. On November 8, 2007, the district judge sentenced the petitioner to 120 months imprisonment each on Counts One and Two to run concurrently, and 68 months imprisonment on Count Three, to run consecutively to the other two counts. ECF No. 91.

The petitioner's current projected release date is October 28, 2032 via good

conduct time.[2] See www.bop.gov/inmateloc/.

The petitioner filed a notice of appeal on November 8, 2007. On appeal, the petitioner raised two claims. First, he alleged that at trial, pursuant to Rules 404(b) and 804(b)(1) of the Federal Rules of Evidence, the district court permitted the Government to introduce the prior testimony of two witnesses who had testified against (and been cross-examined by) the petitioner in a previous criminal trial. The petitioner asserted for the first time on appeal that the Government's evidence constituted inadmissible hearsay because the Government did not sufficiently demonstrate good-faith efforts to locate the witnesses as required to satisfy Rule 804(b)(1) and the Confrontation Clause of the Sixth Amendment. In addition, the petitioner argued that his trial counsel provided ineffective assistance by failing to oppose the Government's assertion that the witnesses whose prior testimony the government sought to introduce were unavailable. The Second Circuit affirmed the conviction. See United States v. Ozsusamlar, 349 Fed. App'x 610 (2d Cir. Oct. 20, 2009).

On October 4, 2010, the petitioner filed an application for a writ of habeas corpus pursuant to 28 U.S.C. 2255. In the petition, he made the following claims: (1) evidence from a prior trial should not have been admitted under Federal Rule of Evidence 404(b) and violated his Confrontation Clause rights; (2) he received ineffective assistance of counsel; (3) the Government engaged in misconduct during the investigative and trial

---

[2] The petitioner has also been sentenced to 235 months imprisonment based on a 2004 conviction for (1) conspiracy to bribe a public official in violation of 18 U.S.C. § 371; (2) bribery of a public official in violation of 18 U.S.C. §§ 201(b)(1)(B) and (b)(1)(C); (3) conspiracy to commit fraud in connection with identification documents in violation of 18 U.S.C. §§ 1028(f); (4) fraud in connection with identification documents in violation of 18 U.S.C. §§ 1028(a)(1), (b)(1)(a)(ii) and (c)(3); (5) conspiracy to transport illegal aliens in violation of 8 U.S.C. §§ 1423(a)(1)(A)(ii) and (V)(II). See United States v. Ozsusamler (02-cr-763 (SDNY). The petitioner's sentence of 188 months was ordered to run consecutively to this 235 month sentence.

phases; (4) he was entrapped; (5) there was not a conspiracy; (6) there was insufficient evidence to support his conviction; and (7) the judge provided erroneous jury instructions.  Finally, the petitioner claimed that any claims that were not properly preserved "either at trial or appeal stages" was due to "ineffective assistance of counsel." [3] The district judge denied this application on November 26, 2012. ECF No. 117.

On January 2, 2013, the petitioner filed a Notice of Appeal. ECF No. 118. On December 9, 2013, the Second Circuit denied the petitioner's motion for a certificate of appealability and dismissed the appeal. ECF No. 126.

Subsequently, the petitioner sought leave to file a successive 2255 motion primarily based on Johnson v. United States, 135 S.Ct. 2551 (2015); Welch v. United States, 136 S.Ct. 1257 (2016); Apprendi v. New Jersey, 530 U.S. 466 (2000); United States v. Booker, 543 U.S. 220 (2005); Ocasio v. United States, 136 S.Ct. 1423 (2016); United States v. Johnstone, 122 F.3d 1058 (2d Cir. 1997); and United States v. Algahaim, 842 F.3d 796 (2d Cir. 2016). On July 7, 2017, the Second Circuit denied the motion because the petitioner had not made a prima facie showing that the requirements of 28 U.S.C. § 2255(h) were satisfied. ECF No. 128.

### III. STANDARD OF REVIEW

#### A. Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, the undersigned is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with

---

[3] The Motion itself, is not scanned in on either the criminal docket or Civil Action No. 1:10cv7565. Therefore, the undersigned has relied on the government's response and the district judge's Order denying the motion.

screening the petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts (2014); see also Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts (2014) (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

### B. Pro Se Litigants

As a *pro se* litigant, the petitioner's pleadings are accorded liberal construction and held to less stringent standard than formal pleadings drafted by attorneys. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam). However, even under this less stringent standard, the petition in this case is subject to summary dismissal. The requirement of liberal construction does not mean that the Court can ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990). As discussed more fully below, the petitioner clearly is not entitled to relief under 28 U.S.C. § 2241, and therefore, no response has been required of the Respondent.

### IV. CLAIMS OF THE PETITION

The petitioner indicates that he is challenging both his conviction and sentence. He alleges that he was denied access to the recording made by Mabrouk of a conversation with him. In addition, he alleges that important witnesses were not called to testify at trial. He further alleges that the government altered the recorded conversation between the Agent and Osman. Finally, the petitioner alleges that the trial transcript was altered, defense counsel was ineffective, and his sentence was not legal.

For relief, the petitioner is "requesting reconsiderating my consecutively sentence for concurrently and dismusin extorting offense sentence." (errors in original). ECF No. 1 at p.8.

## ANALYSIS

Title 28, United States Code, Sections 2241 and 2255 each create a mechanism by which a federal prisoner may challenge his or her detention. However, the two sections are not interchangeable. Prisoners seeking to challenge the validity of their convictions or their sentences are required to proceed under section 2255 in the district court of conviction. Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2000); In re Vial. 115 F.3d 1192, 1194 (4th Cir. 1997).

Under § 2255, a prisoner may move the sentencing court "to vacate, set aside or correct" his sentence if he claims it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Second or successive petitions pursuant to § 2255 must be certified by the appropriate court of appeals. Id. § 2255(h). Courts of appeals grant such requests only if newly discovered evidence establishes "by clear and convincing evidence that no reasonable factfinder would have found the movant guilty" or that a previously unavailable "new rule of constitutional law' has been "made retroactive to cases on collateral review by the Supreme Court." Id.

A petition for writ of habeas corpus pursuant to § 2241, on the other hand, is intended to address the **execution** of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated. Examples of an appropriate use of

§ 2241 include "actions challenging the computation of parole, computation of good time or jail credits, prison disciplinary actions, or imprisonment allegedly beyond the expiration of a sentence." Anderson v. Pettiford, 2007 WL 15777676 (D.S.C. May 31, 2007) (internal citations omitted).

While the terms of § 2255 expressly prohibit prisoners from challenging their convictions and sentences through a habeas corpus petition under § 2241, in limited circumstances, when a § 2255 is an "inadequate or ineffective remedy," § 2255's savings clause permits petitioners to bring a collateral attack pursuant to 28 U.S.C. § 2241. In re Vial, 115 F.3d at 1194, n.5; In re Jones, 226 F.328, 333 (4th Cir. 2000.) However, "[i]t is beyond question that § 2255 is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision," including because of a procedural bar. Id.

When contesting a conviction, a petitioner bears the burden of demonstrating that the § 2255 remedy is inadequate or ineffective, and the standard is an exacting one. In the Fourth Circuit, a petitioner asserting "actual innocence" may establish "that §2255 is inadequate or ineffective to test the legality of a conviction" if he can prove:

> (1) at the time of conviction, settled law of this circuit or of the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; **and** (3) the prisoner cannot satisfy the gate-keeping provisions of § 2255 because the new rule is not one of constitutional law.

In re Jones at 333-34 (emphasis added).

However, "[t]he text of the savings clause does not limit its scope to testing the legality of the underlying criminal conviction." United States v. Wheeler, 886 F.3d 415,

(4th Cir. 2018), *reh'g en banc denied* June 11, 2018 (quoting Brown v. Caraway, 719 F.3d 583, 588 (7th Cir. 2013)). In Wheeler, the Fourth Circuit concluded that § 2255(e) provides "an avenue for prisoners to test the legality of their sentences pursuant to § 2241, and Jones is applicable to fundamental sentencing errors, as well as undermined convictions." Id. at 428. When contesting a sentence through a petition filed under § 2241, a petitioner still must meet the savings clause of § 2255. In the Fourth Circuit, § 2255 is deemed to be "inadequate and ineffective" to test the legality of a sentence only when all four of the following conditions are satisfied:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; **and** (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

Wheeler, supra, at 429 (emphasis added). The Fourth Circuit further specified that a change of the substantive law within the circuit, not solely in the Supreme Court, would be enough to satisfy the second prong of the four-part test established in Wheeler. Id.

Although Petitioner has not raised the savings clause[4], he is not entitled to its application. First, to the extent that the Petitioner is challenging his conviction, even if he

---

[4] The undersigned notes that the petitioner attached a copy of a Motion he filed in his criminal case pursuant to Rule 60(b) and 60(b)(6). In it, he references the Wheeler decision. However, the arguments made in that motion are clearly not relevant to the petitioner's sentence. Specifically, his reference to the ACCA has no bearing on his conviction. Neither does the petitioner's reference to Amendment 750 of the USSG because his offense has nothing to do with crack cocaine. Likewise references to 18 U.S.C. §§ 844(H), 924(c) and 929 have no bearing on his sentence. Finally, the petitioner cites to a Sixth Circuit case with reference to the Hobbs Act, but the petitioner was convicted in the Second Circuit and this Court is within the Fourth Circuit.

satisfied the first and third elements of Jones, the crimes for which he was convicted remain criminal offenses, and therefore, he cannot satisfy the second element of Jones.[5] To the extent the Petitioner is attempting to challenge his sentence, the Court must review the petition under the four-part Wheeler test. As to the first prong, at the time of sentencing, settled law established the legality of the sentence imposed. However, the Petitioner cannot meet the second element of the Wheeler test because he cites no change to the settled law which established the legality of his sentence, let alone a change that has been deemed to apply retroactively to cases on collateral review.

Consequently, because the petitioner attacks the validity of his conviction and sentence and fails to establish that he meets the Jones or Wheeler requirements, he is unable to satisfy the § 2255 savings clause to seek relief under § 2241. Where, as here, a federal prisoner brings a § 2241 petition that does not fall within the scope of the savings clause, the district court must dismiss the unauthorized habeas motion for lack of jurisdiction. Rice, 617 F.3d at 807.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the petition [ECF No. 1] be **DENIED** and **DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION**.

The petitioner shall have fourteen days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which**

---

[5] The claims raised by the Petitioner do not remotely satisfy the savings clause. They are clearly allegations that were raised in his several motions filed with the sentencing court or should have been so raised.

11

**objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is further **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED**: April 14, 2020.

/s/ *James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE